UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DONALD MACK BENNETT,

                              Plaintiff,

                                                        **OPINION & ORDER**

              -against-
                                                        15 Civ. 3746 (JCM)

CARE CORRECTION SOLUTION MEDICAL
CONTRACTER, CHIEF MEDICAL DIRECTOR/
DR. RAUL ULLOA, CHRONIC CARE/
DR. DELORES CURBELLA, N.P. LINDA BEYER,
N.P. MICHAEL KELLY, N.P. DIANE TURFARO,
L.P.N. CRYSTAL MAGIGAN and WESTCHESTER
COUNTY JAIL/LIASON,

                              Defendants.

-------------------------------------------------------------X

        Plaintiff Donald Mack Bennett, proceeding *pro se*, commenced this action pursuant to 42

U.S.C. § 1983[1] alleging that Defendants Correct Care Solutions (sued herein as Care Correction

Solution Medical Contracter [sic]) ("CCS"),[2] Dr. Raul Ulloa, Dr. Dolores Curbelo (sued herein

as Delores Curbella), N.P. Linda Beyer, N.P. Michael Kelly, N.P. Diane Tufaro (sued herein as

Diane Turfaro), L.P.N. Crystal Madigan (sued herein as Crystal Magigan) and Westchester

County Jail/Liason [sic] (collectively, "Defendants") denied him adequate medical care in

---

[1] Plaintiff also invokes the Americans with Disabilities Act ("ADA"). (Docket No. 9 ("Am. Compl.") at 4 ¶ 4). However, Plaintiff does not plead any facts that suggest he meets the definition of disability under the ADA. *See* 42 U.S.C. § 12102.

[2] Although CCS is not named in Defendants' Motion to Dismiss, (Docket No. 43), or Memorandum of Law in support thereof, (Docket No. 45 ("Def. Br.")), CCS has not previously been dismissed from this action. Attorney James C. Freeman appeared on behalf of CCS on August 25, 2015. (Docket No. 11). However, CCS was not served until May 19, 2016, (Docket No. 54), nearly four months after Defendants filed their Motion to Dismiss. At oral argument on the instant motion on January 19, 2017, Mr. Freeman appeared on behalf of all Defendants. Furthermore, correspondence from Mr. Freeman makes clear that he intended to represent all Defendants in the Motion to Dismiss. (*See, e.g.*, Docket No. 12 (writing to request a pre-motion conference regarding the Motion to Dismiss and advising the Court that Mr. Freeman is "counsel for Correct Care Solutions and represents the [individual] Defendants . . . collectively referred to . . . as the 'CCS Defendants.'"); Docket No. 55 (writing on behalf of the "CCS Defendants," Mr. Freeman stated Defendants' intent to "rely on our previously filed Motion to Dismiss.")). Therefore, the Court considers CCS a Defendant for the purposes of this Opinion and Order.

violation of his rights under the Eighth Amendment.[3] (Docket No. 9 ("Am. Compl.")).  The

Court dismissed *sua sponte* all of Plaintiff's claims that accrued prior to May 5, 2012 as time-

barred. (Docket No. 7 at 2-3).  Plaintiff filed his Amended Complaint on August 5, 2015, and

seeks $262,500,000 in total damages, including punitive damages.[4] (Am. Compl. at 6).

Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure on February 26, 2016.[5,6] (Docket Nos. 43, 45 ("Def. Br.")).  Defendants

filed a Reply Memorandum on April 15, 2016. (Docket No. 48).  Plaintiff filed an Opposition to

Defendants' Motion to Dismiss on September 8, 2016, nearly six months after the March 30,

2016 Court-ordered deadline. (Docket Nos. 26, 68 ("Pl. Opp.")).  The Court nevertheless has

considered Plaintiff's Opposition.[7] For the following reasons, Defendants' Motion to Dismiss is

granted in its entirety.

---

[3] Although Plaintiff does not specifically cite the Eighth Amendment, the Court interprets his claims under the Eighth Amendment for reasons explained *infra* Section II(B).

[4] Notably, Plaintiff does not seek damages from Defendant CCS. (Am. Compl. at 6).

[5] Defendants' Motion was electronically filed on ECF on April 15, 2016, the reply date. (Docket No. 26).

[6] Defendants argue that Plaintiff's case should be dismissed in its entirety because Plaintiff was previously barred under 28 U.S.C. § 1915(g) from filing any future actions *in forma pauperis* ("IFP"). (Docket No. 45 at 8-10). Plaintiff continues to be barred from filing a civil action under the IFP statute while a prisoner, unless the allegations bring the complaint within the terms of the statute's "imminent danger" exception. *See* 28 U.S.C. § 1915(g). Here, the Court ordered the Plaintiff to show cause why he should be permitted to proceed IFP in this case. (Docket No. 4).  Upon review of Plaintiff's response to the order to show cause, the Court granted Plaintiff leave to proceed IFP in the instant action.  Accordingly, Plaintiff received permission to file the instant action so the Court will not dismiss the Amended Complaint on these grounds.

[7] *See James v. Correct Care Solutions*, No. 13-cv-0019 (NSR), 2013 WL 5730176, at *3 (S.D.N.Y. Oct. 21, 2013) ("because a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint.") (citation and internal quotation marks omitted).  After receipt of Plaintiff's Opposition, the Court determined that the Motion was fully submitted. (Docket No. 70).

## I. BACKGROUND

For purposes of resolving the instant motion, this Court accepts as true the facts as stated in Plaintiff's Amended Complaint. Based on a liberal reading of the Amended Complaint, Plaintiff seems to allege that during the time he was incarcerated at the Westchester County Jail he received inadequate medical care and suffered "imminent serious dangerous physical injuries." (Am. Compl. at 1). In particular, Plaintiff claims that he had a facial cyst near his right eye, which he describes as an "imminent serious physical dangerous injury" that caused "excruciating pain." (*Id.* at 3 ¶ 1). Plaintiff underwent surgery on July 24, 2015 to have the cyst removed, but maintains that the surgery was originally scheduled for April 20, 2015, and complains of this three-month delay. (*Id.*). Plaintiff also claims that the cyst interfered with his vision, and summarily concludes that it could have been cancer and that the cancer could have spread because the surgery was delayed. (*Id.* at 3 ¶ 1, 5 ¶ 7). Plaintiff identifies a second cyst on his neck, which he describes as an "imminent serious physical dangerous threatening injury" and a "fatal medical issue." (*Id.*). He further complains that two of his medications were changed from pill form to liquid form, (*Id.* at 3 ¶ 1, 4 ¶ 6), and seems to argue that the cysts formed because of this change, (Pl. Opp. at 2-3). Additionally, Plaintiff claims that he contracted MRSA, an infection, when he had the surgery to remove the cyst near his eye, (Am. Compl. at 4-5 ¶¶ 6-7), and that his doctor stopped his blood thinner before his surgery and had not resumed it at the time of filing the Amended Complaint, (*Id.* at 3 ¶ 1). He also contends that the medical professionals at the facility gave him medication to which he was allergic and denied him prescription medication, but it is unclear from the submissions whether Plaintiff suffered any negative reactions. (*Id.* at 3 ¶¶ 2-3). Finally, Plaintiff complains that he was given the "wrong" medication for an infected knee, which took eight months to heal. (*Id.* at 4 ¶ 4). In sum, it

appears that Plaintiff is arguing both about the medical treatment he received as well as the three-month delay in surgery on his cyst.

Plaintiff names as Defendants six individuals who were doctors, nurse practitioners or licensed practical nurses from whom he received the treatment described above, or with whom he otherwise interacted. His specific claims against each Defendant are outlined below.

Plaintiff's claims against Defendant CCS are brought together with his claims against Defendant Dr. Ulloa. (Am. Compl. at 3 ¶ 1). Plaintiff alleges that Defendant Dr. Ulloa postposed the surgery to remove the cyst from near his right eye by three months, from April 20, 2015 to July 24, 2015. (*Id.*). Plaintiff further maintains that Defendant Dr. Ulloa stopped his blood thinner on July 22, 2015, prior to the surgery, and had not put him back on it by July 30, 2015, thereby putting him at risk for a stroke, a grand mal seizure and a heart attack. (*Id.*). Plaintiff also avers that Defendant Dr. Ulloa changed two medications from pill form to liquid form, which Plaintiff claims caused him to suffer an upset stomach, vomiting and cold sweats. (*Id.*). Finally, Plaintiff claims that Dr. Ulloa committed medical malpractice. (*Id.* at 5(III)).

Plaintiff alleges that Defendant Dr. Curbelo falsified medical documents and mistakenly gave him Digioxon [sic], to which he claims he is allergic. (Am. Compl. at 3 ¶ 2).[8] There is no information regarding why Plaintiff was taking Digioxon [sic] and what damages, if any, he suffered from this alleged error. Plaintiff further makes claims of medical malpractice against Defendant Dr. Curbelo. (*Id.* at 5(III)).

---

[8] Plaintiff additionally asserts that Dr. Curbelo failed to perform a physical, take chest X-rays or have Plaintiff tested for tuberculosis in 2011, and that as a result he had to take nine pills twice a week for nine months to prevent tuberculosis. (Am. Compl. at 3 ¶ 2). He claims that this caused him "imminent serious physical danger injuries." (*Id.*). However, this complaint is time-barred because it concerns conduct that occurred before May 5, 2012. (*See* Docket No. 7 at 2-3).

Plaintiff's complaints against Defendant N.P. Beyer are that she denied him his prescribed medications in January 2015, and has slandered and defamed his character. However, Plaintiff does not elaborate further. (Am. Compl. at 3 ¶ 3). He also alleges that she retaliated against him for filing grievances, but does not describe any retaliatory conduct.[9] (*Id.*). Finally, Plaintiff alleges negligent infliction of emotional distress against Defendant N.P. Beyer. (*Id.* at 5(III); Pl. Opp. at 5).

It is unclear exactly what Plaintiff's claims are against Defendant N.P. Tufaro. The most generous interpretation is that Plaintiff contends that Defendant N.P. Tufaro prescribed the "wrong" medication sometime in 2013, 2014 or 2015 to treat a knee infection that was caused by an allergic reaction to a "sponge material." (Am. Compl. at 4 ¶ 4). He further claims that N.P. Tufaro knew about or should have remembered the infection, and that his leg took eight months to heal. (*Id.*).

Plaintiff alleges that Defendant Nursing Supervisor N.P. Michael Kelly slandered, libeled and defamed Plaintiff's character, but offers no further information regarding these allegations. (Am. Compl. at 4 ¶ 5). Plaintiff also appears to claim that he was "racially profiled" by Defendant N.P. Kelly, but does not explain what this means, nor does he provide any further detail to support this claim. (*Id.*).

Finally, Plaintiff accuses Defendant L.P.N. Crystal Madigan of changing his medication from pill to liquid form, causing injury to his kidney and liver. (Am. Compl. at 4 ¶ 6). Plaintiff further claims that Defendant Madigan started rumors, slandered his name and defamed his character. (*Id.*). Plaintiff provides no further information to support these allegations. He also

---

[9] To state a First Amendment claim for retaliation, Plaintiff must "allege that he engaged in protected conduct and that his conduct was a 'substantial or motivating factor' for an adverse action taken by a prison official." *Dotson v. Fischer*, 613 F. App'x 35, 39 (2d Cir. 2015) (citation omitted).

claims negligent infliction of emotional distress against Defendant L.P.N. Madigan. (*Id.* at 5(III); Pl. Opp. at 5).

## II. LEGAL STANDARDS

### A. Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). First, a court deciding a motion to dismiss must accept all of the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss . . . we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.") (citations and internal quotation marks omitted)). The facts alleged must be more than legal conclusions. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration, citation and internal quotation marks omitted)).

Second, the court must determine whether the allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at

556).  Determining whether a complaint states a plausible claim to relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely 'alleged' but not 'show[n] that the pleader is entitled to relief.'" *9 Recordings Ltd. v. Sony Music Entm't*, 165 F. Supp. 3d 156, 160 (S.D.N.Y. 2016) (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks omitted)).  If a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

*Pro se* complaints should be liberally construed and "held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *James v. Correct Care Solutions*, No. 13-cv-0019 (NSR), 2013 WL 5730176, at *2 (S.D.N.Y. Oct. 21, 2013) (citation and internal quotation marks omitted);[10] *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (noting that *pro se* complaints require "special solicitude" and the court should interpret the complaint to raise the strongest claims).  "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *James*, 2013 WL 5730176, at *2. (citations and internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss, the Court may consider the allegations set forth in the complaint, any "'documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Id.* at *3 (quoting *McCarthy v. Dun & Bradstreet*

---

[10] In accordance with *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and any others cited herein, only available by electronic database, accompany this Opinion and Order and shall be simultaneously delivered to Plaintiff, who is proceeding *pro se.*

*Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)).  In the instant case, Plaintiff refers to the grievances he filed as part of the jail's internal complaint procedure as required under the Prison Litigation Reform Act ("PLRA").  Although Plaintiff did not include these documents as exhibits to the Amended Complaint, he does refer to them and, therefore, incorporates them by reference. *Id.* Defendants included Plaintiff's grievances as an exhibit to their Motion to Dismiss.  It is clear from a review of these grievances that Plaintiff is aware of these documents and the information contained in them because he signed the decisions to deny his grievances and requested appeals of the denials. "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* (quoting *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).  Accordingly, this Court "will consider the grievance[s] as incorporated by reference into Plaintiff's [Amended C]omplaint in deciding the motion to dismiss." *Id.*; *Whittle v. Ulloa*, No. 15 CV 8875 (VB), 2016 WL 7351895, at *1 n.3 (S.D.N.Y. Dec. 19, 2016); *see also Ellison v. Evans*, No. 13 CIV. 885 (KBF), 2013 WL 5863545, at *1 n.5 (S.D.N.Y. Oct. 31, 2013), *aff'd sub nom. Fuller v. Evans*, 586 F. App'x 825 (2d Cir. 2014).

## B. Standard for Eighth Amendment Claims

Plaintiff's Amended Complaint makes conclusory allegations of imminent serious physical danger and injuries, and recites a litany of complaints about the medical treatment he received while incarcerated at the Westchester County Jail.  Although Plaintiff does not cite any federal law or constitutional provision on which his complaints are based, he repeats the phrases "imminent serious physical dangerous injury" and "deliberate indifference" throughout his Amended Complaint, which suggests that his claims are premised on the Eighth Amendment.

*See Idowu v. Middleton*, No. 12 Civ. 1238 (BSJ) (KNF), 2012 WL 6040742, at *2 (S.D.N.Y. Dec. 4, 2012). The Eighth Amendment guarantees Plaintiff freedom from "cruel and unusual punishment." U.S. Const., amend. VIII. "To establish a constitutional claim arising out of inadequate medical care, an inmate must prove that prison or jail officials were deliberately indifferent to his serious medical needs." *Gomez v. Cty. of Westchester*, 649 F. App'x 93, 95 (2d Cir. 2016) (citing *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir.2003)) (applying Eighth Amendment standard to pretrial detainee).[11] This test has an objective and subjective component. "As an objective matter, the plaintiff must show that the alleged deprivation of medical care was 'sufficiently serious' . . . [and] [t]he subjective showing is akin to criminal recklessness: that the defendant officials acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).

The objective component has two prongs. "The first prong is whether the prisoner was actually denied adequate medical care. . . . The second prong of the objective test is whether the alleged deprivation of medical care was sufficiently serious." *James*, 2013 WL 5730176, at *4-5 (citing *Salahuddin*, 467 F.3d at 279). To establish that the deprivation of medical care was sufficiently serious, "[a] prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998)); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Specifically, "[w]here the inadequacy alleged is in the medical treatment given, the seriousness inquiry is narrower. . . . [I]f the prisoner

---

[11] In light of the Second Circuit's recent decision in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), this Court refers to *Gomez* for the standard on a constitutional claim arising out of inadequate medical care, but not for the premise that the same standard applies to a pretrial detainee under the Fourteenth Amendment.

is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Stiehl v. Bailey,* No. 08-CV-10498 (CS), 2012 WL 2334626, at *8 (S.D.N.Y. June 19, 2012) (alterations in original) (citations and internal quotation marks omitted).

The subjective element is comparable to criminal recklessness. *See Salahuddin*, 467 F.3d at 280; *see also Gomez*, 649 F. App'x at 95.  "[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." *Salahuddin*, 467 F.3d at 280 (citation omitted). "[T]he official charged with deliberate indifference must act with a 'sufficiently culpable state of mind.'. . . That is, the official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hill*, 657 F.3d at 122 (alteration in original) (citation omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The Second Circuit has further explained that "[t]o establish deliberate indifference, the plaintiff must prove that 'the prison official knew of and disregarded the plaintiff's serious medical needs.'" *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 703).

However, "'inadvertent failure to provide adequate medical care' or 'negligen[ce] in diagnosing or treating a medical condition' does not constitute deliberate indifference on the part of the prison officials." *Id.* at 139 (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  "'It is well-established that [neither] mere disagreement over the proper treatment,'. . . nor '[m]edical malpractice . . . become a constitutional violation merely because the victim is a prisoner.'" *Stiehl*, 2012 WL 2334626, at *9 (alterations in original) (quoting

*Chance*, 143 F. 3d at 703; *Estelle*, 429 U.S. at 106).  "Thus, disagreements over medications,

diagnostic techniques[,] . . . forms of treatment, or the need for specialists or the timing of their

intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp.*

*Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Stiehl*, 2012 WL

2334626, at *9.  "Rather, to state an Eighth Amendment deliberate indifference claim, an inmate

'must demonstrate that the defendants act[ed] or fail[ed] to act while actually aware of a

substantial risk that serious inmate harm w[ould] result.'" *Stiehl*, 2012 WL 2334626, at *9

(alterations in original) (quoting *Farid v. Ellen*, 593 F.3d 233, 248 (2d Cir. 2010)).

## III. DISCUSSION

### A. Analysis

Plaintiff's claims are based both on the medical treatment he received as well as the

three-month delay in surgery on his cyst.  Defendants argue that Plaintiff fails to meet the two-

prong test required to establish an Eighth Amendment claim for inadequate medical treatment.

### 1. Complaints Regarding Medical Treatment

Plaintiff lists a number of complaints regarding medical treatment he received separate

from the surgery for his cyst.  The Court notes that although Plaintiff summarily and repeatedly

uses the phrase "imminent physical serious dangerous injuries" throughout his Amended

Complaint, "[e]ven in a *pro se* case . . . threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Whittle*, 2016 WL 7351895, at *2

(internal quotation marks and citation omitted).  Moreover, "mere negligence in . . . treatment is

insufficient to state a valid Eighth Amendment claim," *Smith*, 316 F.3d at 184 (citing *Estelle*,

429 U.S. at 105-06), and the "mere malpractice of medicine in prison does not amount to an

Eighth Amendment violation," *Harrison*, 219 F.3d at 139. [12]   Likewise, the fact that Plaintiff might prefer a different form of treatment or may be disappointed in the level of treatment he received does not constitute deliberate indifference. *See Sonds*, 151 F. Supp. 2d at 312.

First, the Court finds that Defendants Dr. Ulloa and L.P.N. Madigan did not deny Plaintiff adequate medical care when they changed the form of Plaintiff's medication from pill to liquid form. *See McNulty v. Yaneka*, No. 11-CV-8320 (ER), 2013 WL 684448, at *7 ("Prison officials and medical officers have a wide range of discretion in treating prisoners . . . Accordingly, the determinations made by medical providers concerning the treatment of patients are given a presumption of correctness.") (internal quotation marks omitted) (citing *Sonds*, 151 F. Supp. 2d at 312).   Next, Plaintiff claims that he suffered from a cyst on his neck, separate from the facial cyst that was surgically removed. (Am. Compl. at 5 ¶ 7).   However, he does not allege that he was denied adequate medical care for the cyst on his neck.   To the contrary, the facts in Plaintiff's Amended Complaint suggest that it was promptly treated.   Plaintiff states that the "lump" on his neck "accumilated" [sic] one week prior to the surgery for his facial cyst— therefore, in mid-July, 2015—and that he was "suffering strong sufficient pain." (*Id.*).   Plaintiff further maintains that as of July 30, 2015, the date he signed the Amended Complaint, the hospital had "split open" the cyst on his neck to "take . . . all precautions," and that he was waiting to undergo several procedures to ensure that the cyst was not cancerous. (*Id.*).   Thus, from the time the cyst appeared on Plaintiff's neck in mid-July to the date of his Amended Complaint, approximately two weeks later, it appears Plaintiff had received medical treatment. The Court therefore finds that Plaintiff was not denied adequate medical care for the cyst on his

---

[12] The Court does not suggest or rule on whether the Defendants acted negligently or committed malpractice. *See infra* Section III(B).

neck. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse.") (alterations in original) (citation and internal quotation marks omitted).

Finally, Plaintiff makes the following additional complaints: (i) Defendant Dr. Ulloa did not resume his blood thinner medication promptly after surgery; (ii) Defendant Dr. Curbelo prescribed him a medication to which he was allergic; (iii) Defendant N.P. Beyer denied him medication that he was prescribed; (iv) Defendant N.P. Tufaro prescribed him the "wrong" medication for a knee infection, which took eight months to heal; and (v) he contracted MRSA after his cyst surgery. Plaintiff's Amended Complaint is silent as to what harm, if any, Plaintiff suffered from these alleged errors. The Court finds that even if the above incidents constitute denials of adequate medical care, they do not amount to "sufficiently serious" deprivations, because in each incident there is no indication that a "condition of urgency" existed. *See Hemmings*, 134 F.3d at 108 ("Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists") (citation and internal quotation marks omitted); *see also Chance*, 143 F.3d at 703 ("mere disagreement over the proper treatment does not create a constitutional claim. . . . Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.")

Plaintiff's claims regarding the medical treatment he received, unrelated to the delay in surgery for his facial cyst, thus fail to meet the objective element required for a claim under the Eighth Amendment as they either do not amount to denials of adequate medical care or are not

sufficiently serious deprivations. Nor does Plaintiff's Amended Complaint allege any facts that suggest Defendants acted with the deliberate indifference required to satisfy the subjective element in the treatment described above.[13] Without more, Plaintiff's claims must fail.

## 2. Complaints Regarding Delay in Surgery

Plaintiff's allegations regarding the delay in surgery for his facial cyst require further analysis. Plaintiff alleges that the cyst was excruciatingly painful, that it interfered with his vision and that the delay caused him "imminent serious physical dangerous injury." (Am. Compl. at 3 ¶ 1).

### i. Objective Element

The Court must first address the objective element of an Eighth Amendment claim: whether Plaintiff was actually denied adequate medical care and, if so, whether the deprivation was sufficiently serious. *See Salahuddin*, 467 F.3d at 279. There is no evidence to support the proposition that a three-month delay is a denial of adequate medical care. However, for the purposes of the instant motion and construing Plaintiff's allegations in the light most favorable to him, the Court finds that a three month delay in surgery, when Plaintiff was allegedly suffering from excruciating pain and blurry vision, may constitute a denial of adequate medical care.

Turning to the seriousness of the deprivation, "if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Salahuddin*, 467 F.3d at 280 (alteration in original) (citation omitted). "Moreover, '[w]here temporary delays or interruptions in the

---

[13] In fact, Plaintiff frequently describes Defendant's conduct as negligent or as malpractice. (*See, e.g.*, Am. Comp. at 4 (stating "advertent and hazardous negligence" and malpractice in his cause of action), 5 (listing malpractice under the injuries he sustained); Pl. Opp. at 5-6, 8).

provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second Circuit], they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.'" *Bell v. Jendell*, 980 F. Supp. 2d 555, 560 (S.D.N.Y. 2013) (alterations in original) (quoting *Ferguson v. Cai,* No. 11–CV– 6181(PAE), 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012)). Here, Plaintiff offers no evidence to support his complaints that he was in excruciating pain, but at the motion to dismiss stage the Court must accept all the allegations in the Amended Complaint as factually true. Consequently, reading the allegations in the light most favorable to Plaintiff, there is a facial plausibility that Plaintiff suffered a sufficiently serious injury. *See James*, 2013 WL 5730176, at *6.

### ii. Subjective Element

The second component of an Eighth Amendment claim is the subjective test: the Defendants must have been deliberately indifferent and have acted with a "sufficiently culpable state of mind." *See Hemmings*, 134 F.3d at 108. To show deliberate indifference, Plaintiff must set forth sufficient evidence that, if taken as true, would show that "the prison official knew of and disregarded the plaintiff's serious medical needs." *Harrison*, 219 F.3d at 137 (citation and internal quotation marks omitted). This "requires allegations of the defendants' subjective state of mind." *Dotson v. Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015).

Here, Plaintiff has not made any allegations regarding Defendants' subjective state of mind, nor has he alleged any conduct or behavior that would suggest the delay was caused by Defendants' deliberate indifference. *See Bell*, 980 F. Supp. 2d at 562 ("[T]his case is similar to other cases where prisoners merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional or reckless.") (collecting cases). Furthermore,

"[a]lthough a lengthy, unjustifiable delay in providing necessary medical treatment might evidence deliberate indifference," *Gomez*, 649 F. App'x at 95, a three-month delay under the circumstances of this case does not amount to deliberate indifference.

Indeed, the grievances referenced in Plaintiff's Amended Complaint, and the responses thereto, indicate that the doctors and medical staff were monitoring Plaintiff's facial cyst and that he was timely referred to General Surgery. Although Plaintiff filed several grievances in April 2015, he did not mention the cyst until May 2015. (*See* Docket No. 44-5 at 5, 13). Plaintiff filed the first of two grievances regarding surgery for the cyst on May 19, 2015. (Docket No. 44-6 at 10). He complained that Dr. Ulloa was refusing to approve surgery for the "excruciating pain" near his right eye. (*Id.*). He indicated that he had been seen by a surgeon during the first week of May, approximately two weeks before he filed the grievance, and reported that the surgeon had told him that if the cyst was not removed it could lead to blindness or cancer.[14] (*Id.*). Plaintiff also complained that Dr. Ulloa "never had me gone [sic] to my last scheduled [sic] on 4-20-15 being he said I was going home which I was not," but does not state what had been scheduled for April 20, 2015—whether it was surgery, a cyst-related appointment, or something else entirely.[15] (*Id.*) On May 22, 2015, Plaintiff received and signed the response to his grievance. (Docket No. 44-6 at 9). The response advised Plaintiff that his grievance was denied because it was

---

[14] At oral argument on January 19, 2017, the Court asked Plaintiff several times whether the facial cyst had been diagnosed. Plaintiff repeatedly evaded the question and provided no evidence to suggest that it was cancer. Moreover, even if the cyst was cancer, it is clear from the grievances and responses thereto that Plaintiff was treated regularly. Therefore, a diagnosis of cancer would not change this Court's analysis. *See Farmer*, 511 U.S. at 844 ("prison officials . . . may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); *see also Stiehl*, 2012 WL 2334626, at *6, 12 (finding no deliberate indifference where surgery was delayed, despite ultimate diagnosis of cancer); *Thomas v. Wright*, No. 99-CV-2071, 2002 WL 31309190, at *9 (N.D.N.Y. Oct. 11, 2002) ("Although [medical staff] may have failed to diagnose or even detect [plaintiff's] cancer, the record does not show that they did so deliberately. Furthermore, the record does not show that they disregarded his medical needs.").

[15] The Court nevertheless accepts as true, for the purposes of this Opinion and Order, Plaintiff's allegation that the surgery was originally scheduled for April 20, 2015.

unsubstantiated, and indicated that Dr. Ulloa had previously reviewed Plaintiff's case and "identified measurable perimeters to be met prior to referral for surgery." (*Id.*). Further, Plaintiff was informed that Dr. Ulloa would review his request for surgery, as well as the progress notes submitted after Plaintiff's early-May appointment, to determine whether surgery was indicated. (*Id.*). Plaintiff appealed the denial to the Assistant Warden. (Docket No. 44-6 at 6). The Assistant Warden informed Plaintiff, in a memorandum dated May 28, 2015, that it was "apparent that you have been seen multiple times for several medical issues including for your cyst," and that according to the medical record, Plaintiff was being "treated appropriately." (*Id.*). The Assistant Warden also indicated that Plaintiff was scheduled for an appointment the following week and confirmed that he was generally "being scheduled for treatment." (*Id.*). Finally, the Assistant Warden advised Plaintiff that it was "incumbent" on him "to cooperate with any and all procedures or tests related to the examination and/or treatment," and noted that Plaintiff had, in the past, "failed to cooperate" and that "accordingly [his] procedures ha[d] been either delayed or cancelled."[16] (*Id.*). Despite these assurances that Plaintiff was already receiving and had been scheduled for additional treatment, he filed his second grievance regarding surgery for the cyst four days later, on June 1, 2015. (Docket No. 44-6 at 18). He again complained that Dr. Ulloa was delaying surgery, and claimed that this delay was causing him "excruciating pain." (*Id.*). The response to Plaintiff's grievance, which Plaintiff signed on June 8, 2015, noted that Dr. Ulloa had seen Plaintiff on the day his grievance was filed, and that Dr. Ulloa had "reviewed [Plaintiff's] medical record to ensure that he is receiving care for his facial cyst." (Docket No. 44-6 at 21.). Further, it indicated that Plaintiff was scheduled for an evaluation by General Surgery. (*Id.*). Plaintiff appealed, and his appeal was denied by the Assistant Warden in a

---

[16] Defendants opine that the surgery may have been delayed because Plaintiff "obstructed the medical staff from performing their duties." (Def. Br. at 15).

memorandum addressed to Plaintiff and dated June 10, 2015. (Docket No. 44-6 at 24). The Assistant Warden wrote that it was "apparent that you are receiving adequate medical care," and that it was "also apparent that you do not agree," but noted that "without credible and logical evidenced based on medical proof," Plaintiff's "sentiment" could not compel the medical staff to provide care that was not "clinically indicated." (*Id.*). He also advised Plaintiff that "tests and procedures have been initiated and scheduled but again it appears that the swiftness of these may not be to your liking." (*Id.*).

This evidence fails to establish any intentional or reckless delay in medical treatment. Instead, it appears that Plaintiff's cyst was reasonably monitored and treated. *See Stiehl*, 2012 WL 2334626, at *6, 12 (finding that a "period of approximately seven months between Plaintiff's first complaint [of a cyst that allegedly was painful, caused blurry vision and was ultimately diagnosed as cancer], and Defendants' scheduling a biopsy or surgery" did not amount to deliberate indifference where "the reasons for those delays were reasonable and Plaintiff's mass was never ignored."); *Gutierrez*, 111 F.3d at 1373-74 (finding that plaintiff could not show deliberate indifference on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which is subject to the same standards as Rule 12(b)(6), despite a cyst with "a purulent draining infection accompanied by excruciating pain and, at times, fever in excess of 100 degrees," where plaintiff "repeatedly received treatment over [a] ten-month period and . . . at most he experienced an isolated occasion or two where he did not receive prompt treatment."); *see also Arce v. Banks*, 913 F. Supp. 307, 310 (S.D.N.Y. 1996) (dismissing claims under Rule 12(b)(6) where plaintiff refused to undergo surgery for cyst-removal in the manner prescribed by the surgeon and did not allege that he was unable to have the cyst removed); *cf. Dotson*, 613 F. App'x at (vacating dismissal and remanding to district court where plaintiff alleged that

defendants ignored medical recommendation that plaintiff required urgent care and delayed surgery for removal of cyst by one year, which resulted in continued severe symptoms). Therefore, Plaintiff has failed to satisfy the subjective element of an Eighth Amendment claim, and his case must be dismissed.

### 3. Claims Against Westchester County

Plaintiff lists the Westchester County Jail/Liason [sic] in the caption of his Amended Complaint, and puts both the Westchester County Jail and the Westchester County Jail Department of Correction in the body of his Amended Complaint. (Am. Compl. at 1-2, 4). Defendants maintain that neither the Westchester County Jail nor the Westchester County Jail Department of Correction are proper legal entities and, therefore, both should be dismissed. (Docket No. 45 at 5 n.1). While the Court agrees that neither entity is a proper party, reading Plaintiff's Amended Complaint liberally, the Court instead construes it as raising a claim against the municipality of Westchester County. *See Warren v. Westchester Cty. Jail,* 106 F. Supp. 2d 559, 561 n.1 (S.D.N.Y. 2000) (finding that where *pro se* plaintiff sued the Westchester County Jail, "the correct governmental defendant [was] Westchester County," and Plaintiff was "therefore deemed to have sued the municipality of Westchester County rather than the jail."). Plaintiff also appears to assert claims against Defendant Dr. Ulloa in his official capacity, (Docket No. 9 at 3), which further suggests that Plaintiff intended to sue Westchester County. *See Whittle,* 2016 WL 7351895, at *6.

However, even construing Plaintiff's Amended Complaint as raising a claim against Westchester County, "[m]unicipal liability under Section 1983 cannot be based on a theory of *respondeat superior.*" *Warren,* 106 F. Supp. 2d at 566; *see also Kucharczyk v. Westchester Cty.,* 95 F. Supp. 3d 529, 538-40 (S.D.N.Y. 2015) (explaining that pursuant to *Monell v. Dep't of*

*Social Srvs. of the City of N.Y.*, 436 U.S. 658, (1978), "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort," and that "to survive a motion to dismiss, Plaintiffs cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.") (alteration in original) (citations and internal quotation marks omitted).  Here, Plaintiff bases his claim against Westchester County on a theory of *respondeat superior*, (Docket No. 9 at 4), and has not alleged that any municipal policy or custom exists such that Westchester County may be held liable under Section 1983.  Moreover, "[u]nless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable [because] *Monell* does not create a stand-alone cause of action[.]" *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013); *see also Gomez*, 649 F. App'x at 96 ("because [plaintiff] failed to plausibly allege an underlying constitutional violation, the district court properly dismissed his claims for municipal liability.").  Here, Plaintiff's § 1983 claim against the individual Defendants is dismissed, and therefore there is no ground for holding Westchester County liable.  Consequently, Plaintiff's claim against Westchester County is dismissed.

**4.  Federal Claims Against Defendant N.P. Kelly**

Finally, Plaintiff fails to allege that Defendant N.P. Kelly was personally involved in the medical treatment or delay in surgery on which Plaintiff's Eighth Amendment claim is founded. This provides an additional reason why Plaintiff's § 1983 claim against Defendant N.P. Kelly is dismissed. *Bell*, 980 F. Supp. 2d at 559 ("'[i]t is well settled that, in order to establish defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the

20

defendant's personal involvement in the alleged constitutional deprivation.'") (alterations in original) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)).  Turning to Plaintiff's claim that he was "racially profiled" by Defendant N.P. Kelly, Plaintiff has failed to allege any facts that would support a federal claim based on Plaintiff's race.[17]  Furthermore, the Court notes that "yelling, cursing, or even race-baiting does not violate any constitutionally protected rights." *Arce*, 913 F. Supp. at 309 (dismissing claims under Rule 12(b)(6) and collecting cases that held that racial insults and abusive language do not violate the Constitution or form the basis for claims under § 1983).  Plaintiff's state law claims against Kelly sounding in defamation are discussed *infra* Section III(B).

## B.  State Law Claims

The Court interprets Plaintiff's claims for negligence, malpractice, negligent infliction of emotional distress and defamation—both slander and libel[18]—as state law claims.[19]  These claims do not present a federal question, nor does Plaintiff allege diversity of citizenship with respect to any of the Defendants. *See* 28 U.S.C. §§ 1331, 1332.  Therefore, the Court would only retain jurisdiction over these claims based on supplemental jurisdiction. *See id.* § 1367.

---

[17] Reading Plaintiff's Amended Complaint liberally, the Court could construe Plaintiff's claim that he was "racially profiled" as an Equal Protection Claim under the Fourteenth Amendment. "'To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir.2005)) (analyzing *pro se* plaintiff's Equal Protection claim alleging disparate treatment, based on race, of mentally ill prisoners).  Here, Plaintiff has not pled any facts that suggest he was treated differently than other prisoners based on his race.

[18] "'Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name. Generally, spoken defamatory words are slander; written defamatory words are libel.'" *Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 917 F. Supp. 2d 283, 289 (S.D.N.Y. 2013), *aff'd*, 768 F.3d 259 (2d Cir. 2014) (quoting *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir.2001)).

[19] *See, e.g.*, *Smith*, 316 F.3d at 184 ("[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law"); *Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003) ("Defamation alone is clearly not sufficient to create an action under Section 1983."); *Bell*, 980 F. Supp. 2d at 563-64 (treating "medical negligen[ce]" as a claim under state tort law); *Gibson v. DiRubbio*, No. 99 CIV. 3202 (LAP), 2000 WL 1159553, at *5 (S.D.N.Y. Aug. 16, 2000), *aff'd*, 12 F. App'x 26 (2d Cir. 2001) (declining to exercise supplemental jurisdiction over state law claim of negligent infliction of emotional distress).

However, because Plaintiff's federal claim under § 1983 is dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Matican v. City of New York*, 524 F.3d 151, 154-55 ("[I]f [plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims."); *Bell*, 980 F. Supp. 2d at 563-64 (declining to exercise supplemental jurisdiction over plaintiff's state law claim for "medical negligen[ce]."). As a general rule, the Second Circuit and the Supreme Court "have held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in its entirety and Plaintiff's Amended Complaint is dismissed. The Clerk is respectfully requested to terminate the pending motion (Docket No. 43) and close the case.

Dated:   March 24, 2017
         White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge

22